**T.W.P. COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 484–80C.**

United States Claims Court.

Dec. 9, 1982.

Horst Bendzulla, T.W.P. Co., pro se.

Kathleen A. Flynn, with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

## MEMORANDUM OF DECISION

KOZINSKI, Chief Judge.

This is a case of contract interpretation. At issue is whether contract FO4699 78 C0214, which called for painting certain dormitories at McClellan Air Force Base, required plaintiff T.W.P. (1) to provide a second coat of paint where complete coverage was not achieved with the first coat, and (2) to paint window frames and doors in addition to walls and ceilings. Plaintiff

---

performed the additional work at the direction of the contracting officer and now seeks compensation in the amount of $32,500, claiming that the work was not required by the contract.

Trial was held on November 18, 1982, in San Francisco, California, with plaintiff represented ably by Horst Bendzulla (not an attorney) who at the time of the transaction was a general partner of T.W.P. Based upon the evidence presented, the court enters the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. On August 23, 1978, Invitation For Bids (IFB) No. F04699 78 B0093 was issued for painting the interior of dormitory buildings at McClellan Air Force Base, Sacramento, California. The IFB contained Standard Form 22, Instructions to Bidders. Paragraph 2 of the instructions provided:

> Bidders should visit the site and take such other steps as may be reasonably necessary to ascertain the nature and location of the work, and the general and local conditions which can affect the work or the cost thereof. Failure to do so will not relieve bidders from responsibility for estimating properly the difficulty or cost of successfully performing the work. The Government will assume no responsibility for any understanding or representations concerning conditions made by any of its officers or agents prior to the execution of the contract, unless included in the invitation for bids, the specifications, or related documents.

(Jt. Ex. 1A.)

2. At page 25 the IFB also incorporated by reference Defense Acquisition Regulation 7–602.14, CONDITIONS AFFECTING THE WORK (1964 JUN), which provided:

> The Contractor shall be responsible for having taken steps reasonably necessary to ascertain the nature and location of the work, and the general and local conditions which can affect the work or the cost thereof. Any failure by the Contractor to do so will not relieve him from responsibility for successfully performing the work without additional expense to the Government. The Government assumes no responsibility for any understanding or representations concerning conditions made by any of its officers or agents prior to the execution of this contract, unless such understanding or representations by the Government are expressly stated in the contract.

(Def. Ex. 12.)

3. T.W.P. did not inspect the premises prior to preparing and submitting its bid to the government. The company has offices approximately 30 miles from McClellan Air Force Base.

4. The bids received by the government were:

| | |
|---|---|
| Frank Brown Painting | $124,112 |
| Henry Angelo & Sons | $179,000 |
| T.W.P. Company | $ 94,897 |

(Def. Ex. 3.) The government estimate was $150,000.

5. By memorandum of September 18, 1978, the government informed T.W.P. of the names of the other bidders, the amounts of their bids and the government estimate. The memorandum noted that T.W.P.'s bid was "significantly lower than the other bids." (Def. Ex. 3.) T.W.P. was requested to verify its bid. It was advised that, if a mistake was not discovered, the verification letter must contain a statement that the company had reviewed its bid figures and all other data specifically looking for errors.

6. The amount bid by the plaintiff was the amount it intended to bid. T.W.P. verified its bid in a letter dated September 20, 1978. (Def. Ex. 4.)

7. The painting contract was awarded to plaintiff in the fixed price amount of $94,897 on September 28, 1978.

8. The contract required plaintiff to apply a clean, cream color to the interior walls. The existing color was a medium dark Air Force green.

9. Plaintiff failed to achieve complete coverage over some of the interior masonry (cinder block) walls with one coat of paint.

10. Chesley Gilman, the contracting officer, directed the plaintiff to apply a second coat of paint to those masonry surfaces where complete coverage was not achieved with one coat.

11. Mr. Gilman also required the plaintiff to paint the metal window frames and the wooden doors.

12. Section 09900, ¶ 3.02 F 2b of the contract specifications required the contractor to apply the first coat of paint at a coverage rate of between 300 and 500 square feet of surface area per gallon.

13. In preparing T.W.P.'s bid, Mr. Bendzulla calculated coverage at the lowest coverage rate of 500 square feet of surface area per gallon.

14. Section 09900, ¶ 3.02 A 5 of the specifications provided:

If a specific coat of paint fails to achieve complete coverage, as determined by the Contracting Officer, apply an additional coat.

(Jt. Ex. 1.)

15. Paragraphs 3.02 A 5 and 3.02 F 2b and c of the specifications were contained in approximately 75 construction contracts let by McClellan Air Force Base during the years 1976, 1977 and 1978. With the exception of plaintiff, no other contractor interpreted these specifications as requiring the application of only one coat of paint if complete coverage were not achieved by the application of one coat.

16. The ability of a contractor to achieve complete coverage with one coat of paint depends upon many variables such as the application method, painting efficiency and business procedures.

17. T.W.P. is an experienced painting contractor. A site investigation would have revealed that more than one coat might be required in some areas in order to obtain complete coverage.

18. Section 09900, ¶ 2.02 A 2 of the specifications required plaintiff to paint trim the same color as adjacent walls.

19. Section 09900, ¶ 1.01 C3 of the specifications defined "trim" as follows:

The term 'trim' includes all moldings, sash, doors, transoms, frames, mullions, lintels, sills, and previously painted related hardware.

(Jt. Ex. 1.)

20. Mr. Bendzulla admitted that the terms "transoms," "mullions" and "lintels," referred to parts of window frames.

21. Though the contract expressly excluded certain surfaces from painting, *see* section 09900, ¶ 1.01 B, window frames and wooden doors were not so excluded.

### CONCLUSIONS OF LAW

1. Read as a whole, contract FO4699 78 C0214 did not limit the contractor's obligation merely to applying one coat of paint. Rather, the contract called for complete coverage of the surface area so that none of the previous paint would show through.

2. The contract authorized the contracting officer to determine when complete coverage was not achieved with one coat of paint. Absent a showing of abuse of discretion, the contracting officer's decision is final.

3. The contracting officer did not abuse his discretion in requiring T.W.P. to apply a second coat of paint to achieve complete coverage in certain areas.

4. The contract required the painting of window frames and bathroom doors. The contracting officer was therefore justified in requiring plaintiff to paint those items without additional compensation.

Judgment will be entered for the defendant and the petition will be dismissed.

Costs to the prevailing party.

IT IS SO ORDERED.